**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| Martin Lunn, | ) | Civil Action No. 1:15-cv-04454-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Mike Flower, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Martin Lunn ("Plaintiff") filed the instant action against Defendant Mike Flower ("Defendant") to recover allegedly unpaid wages pursuant to the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. §§ 41-10-10 to -110 (2016). (ECF No. 1-1.)

This matter is before the court pursuant to Defendant's Motion to Transfer Venue to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). (ECF No. 4 at 1.) In the alternative, Defendant moves for dismissal of the matter pursuant to the doctrine of forum non conveniens. (Id.) Plaintiff opposes Defendant's Motions in their entirety. (ECF No. 9.) For the reasons set forth below, the court **GRANTS** Defendant's Motion to Transfer Venue and **DENIES** Defendant's Motion to Dismiss.

### I.    RELEVANT BACKGROUND TO PENDING MOTIONS

Plaintiff alleges that he was an employee of MDM Services Corporation ("MDM") in which Defendant was the owner and Chief Executive Officer. (ECF No. 1-1 at 4 ¶¶ 2, 5.) Plaintiff alleges that his wages were based on commissions received for contracts that he procured on behalf of MDM. (Id. at ¶ 6.) Despite making numerous demands for unpaid commissions, Plaintiff alleges that MDM in concert with Defendant failed to pay Plaintiff the wages that were due him. (Id. at 4 ¶ 6–5 ¶ 13.)

On September 2, 2015, Plaintiff filed a Complaint against Defendant seeking unpaid commissions pursuant to the SCPWA in the Aiken County (South Carolina) Court of Common Pleas. (ECF No. 1-1.) On November 2, 2015, Defendant removed the matter to this court pursuant to 28 U.S.C. § 1332 on the basis that "Plaintiff is a citizen of South Carolina, and Defendant is not a citizen of South Carolina" and "[t]he matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs." (ECF No. 1 at 2 ¶¶ 5–7.) In response to Plaintiff's Complaint, Defendant filed an Answer and Counterclaims (ECF No. 5) and the instant Motions to Transfer Venue and to Dismiss (ECF No. 4) on November 9, 2015. Plaintiff filed a Response in Opposition to the Motion to Dismiss/Change Venue on December 3, 2015, to which Defendant filed a Reply in Support of Motion to Transfer Venue or Dismiss on December 14, 2015. (ECF Nos. 9, 11.) Additionally, Plaintiff filed a Sur-Response on January 5, 2016, and Defendant filed a Sur-Reply on January 22, 2016. (ECF Nos. 13, 14.)

## II.     JURISDICTION

The court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00. Plaintiff "is a citizen and resident of Aiken County, South Carolina." (ECF No. 1-1 at 4 ¶ 1.) Defendant "resides in the State of California." (Id. at ¶ 2.) The court is satisfied that the amount in controversy exceeds $75,000.00. (ECF Nos. 1 at 2 ¶ 7 & 1-1 at 5 ¶ 10.)

## III.    LEGAL STANDARD

A.     <u>Motions to Transfer Venue under 28 U.S.C. § 1404(a) in the Context of a Forum Selection Clause.</u>

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have

consented." Id. "The appropriate venue of an action is a procedural matter that is governed by federal rule and statutes." Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 651 (4th Cir. 2010) (citing Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1391; 28 U.S.C. § 1406(a)). "Whether a case should be transferred to an alternative venue rests within the sound discretion of the district court." Sw. Equip., Inc. v. Stoner & Co., Inc., C/A No. 6:10-1765-HMH, 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010) (citing In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984)).

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations."[1] Atl. Marine Constr. Co. v. U.S. Dist. Ct. W.D. Tex., 134 S. Ct. 568, 581 (2013). However, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Id. "[A] valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum[,]'" should be "'given controlling weight in all but the most exceptional cases.'" Id. (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 & 33 (1988)).

---

[1] The Court in Atlantic Marine identified the private and public factors as follows:

> Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n.6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Ibid. (internal quotation marks omitted). The Court must also give some weight to the plaintiffs' choice of forum. See Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S. Ct. 544, 99 L. Ed. 789 (1955).

Atl. Marine, 134 S. Ct. at 581 n.6.

A court conducts a two-part analysis in deciding whether to enforce a forum selection clause. First, the court determines whether the forum-selection clause is valid and enforceable. Atl. Marine, 134 S. Ct. at 581. A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10 (1972). A forum-selection clause may be considered unreasonable if "(1) [its] formation was induced by fraud or over-reaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4)[its] enforcement would contravene a strong public policy of the forum state." Albemarle Corp., 628 F.3d at 651 (quoting Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)).

Second, the court must consider whether "extraordinary circumstances" would hinder the enforcement of the forum-selection clause. Atl. Marine, 134 S. Ct. at 581. In considering whether extraordinary circumstances are present to avoid enforcement of a valid forum selection clause, a court may consider "arguments about public-interest factors only."[2] Id. at 581–82.

B.     Dismissal for Forum Non Conveniens

Forum non conveniens is "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422,

---

[2] "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." Atl. Marine, 134 S. Ct. at 581. "First, the plaintiff's choice of forum merits no weight." Id. "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." Atl. Marine, 134 S. Ct. at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." Atl. Marine, 134 S. Ct. at 582.

4

429 (2007) (citations omitted). "A federal court has discretion to dismiss a case on the ground of forum non conveniens 'when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" Id. "For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." Id. at 430 (citing 28 U.S.C. § 1404(a)).

## IV.    ANALYSIS

A.    The Parties' Arguments

1. *Defendant*

Defendant contends that the unpaid commissions at issue in this action arise from a Profit Improvement Incentive Program (the "Commission Agreement") agreed to by MDM and Plaintiff on September 15, 2003. (ECF No. 4 at 2 (referencing ECF No. 4-1).) Defendant further contends that the Commission Agreement has a forum selection clause that requires the litigation of disputes in a state or federal court in Orange County, California. (Id. (citing ECF No. 4-1 at 3 ¶ V ("This agreement shall be construed and interpreted according to the laws of the State of California and the jurisdiction and venue of any legal action concerning same shall be Orange County, California.")).) Defendant further contends that the Commission Agreement is enforceable because both he and Plaintiff each personally signed the document. (Id. at 8.)

Based on the aforementioned, Defendant argues that the court should give the forum selection clause "controlling weight" and either transfer the case or dismiss it. (Id. at 3 (citing, e.g., Atl. Marine Constr. Co. v. U.S. Dist. Ct. W.D. Tex., 134 S. Ct. 568, 581 (2013) ("When the

5

parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.")).)  Defendant argues that because there is a forum selection clause, the court in the context of its § 1404(a) analysis can only consider public-interest factors because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  (Id. at 4 (quoting Atl. Marine, 134 S. Ct. at 582).)  In this regard, Defendant asserts that in conjunction with the forum selection clause, the public interest factors weigh in favor of transferring the case to California because (1) case load numbers demonstrate that court congestion in the District of South Carolina is greater than in the Central District of California, (2) only one party to the Commission Agreement is located in South Carolina, and (3) the forum in which the case proceeds will have to apply California law as required by the Commission Agreement.  (Id. at 6–7.)  More specifically, Defendant asserts that the Central District of California is the appropriate transfer recipient because it includes Orange County, California.  (Id. at 18.)

In addition to the foregoing, Defendant asserts that the forum selection clause in the Commission Agreement is valid because it was "negotiated at arms-length" and there is no evidence of "fraud, duress, misrepresentation, or any other contractual misconduct."  (ECF No. 11 at 5.)

   2. *Plaintiff*

Plaintiff opposes the Motion to Transfer Venue arguing that Defendant's invocation of the forum selection clause was invalid because he was not a party to the Commission Agreement in that "[h]e signed the contract, but only in his capacity as the agent of the corporation."  (ECF No. 9 at 3.)  Plaintiff argues that venue is proper in South Carolina because the Albemarle Corp.

factors required to be weighed under § 1404 do not support a transfer of venue from this proper district. In support of his arguments, Plaintiff asserts that if the case is transferred to California, he will be deprived of (1) his day in court as a result of the increased cost of litigation, the loss of access to certain witnesses, and his inability to travel out of South Carolina[3]; (2) his remedy under the SCPWA because the forum selection clause requires application of California law and "S.C. Code § 41-10-80(c) obviously does not exist under California law"; and (3) the protection of the SCPWA, which represents the strong public policy interest in South Carolina of "protect[ing] its citizens from unscrupulous employers who fail to pay their employees the wages that are earned inside the borders of this state." (ECF No. 9 at 5–6.)

Plaintiff also asserts that the public interest factors as outlined in Atlantic Marine weigh in favor of keeping the matter in South Carolina because the case would only add to the administrative congestion in the California court system. Moreover, Plaintiff asserts that the controversy is clearly localized to South Carolina for the following reasons:

> This case[] is based on a South Carolina statute that was enacted to protect South Carolina citizens from employers who unlawfully withhold wages . . . . All of the bad acts alleged by both Plaintiff and Defendant occurred in the State of South Carolina. All of the damages alleged by both parties were incurred in South Carolina. Every witness that can be identified in the pleadings, with the exception of Defendant himself, is located in the State of South Carolina . . . .
>
> The only forum that is at home with the law is South Carolina. The sole cause of action is based on a South Carolina statute.

(Id. at 7–8.)

---

[3] Plaintiff filed a Sur-Response wherein he stated that he was diagnosed with Neuromyelitis Optica, a medical condition allegedly "caused by an antibody that attacks the myelin sheathing of the nerves behind the eyes in the spinal cord of the patient." (ECF No. 13 at 1.) Plaintiff stated that he had been instructed by his doctors to not travel and remain within proximity to the hospital. (Id. at 2.) In response, Defendant pointed out that Plaintiff had failed to provide sufficient "evidentiary support for any threat of recurrence or any travel restriction." (ECF No. 14 at 1.)

B.     The Court's Review

Plaintiff filed the instant action seeking to recover allegedly unpaid commissions. (ECF No. 1-1 at 4 ¶ 6.) Defendant moves to transfer the matter to the Central District of California pursuant to a forum selection clause contained in a purported Commission Agreement. (ECF No. 4 at 1.)

Plaintiff opposes transfer first arguing that Defendant cannot invoke the forum selection clause because he was not a party to the Commission Agreement. To aid in its analysis of this issue, the court looked partly to decisions regarding agreements to arbitrate since the Supreme Court has characterized an arbitration clause as "a specialized kind of forum-selection clause." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974). "Equitable estoppel allows a non-signatory to compel arbitration of claims brought by a signatory when the claims are 'inextricably intertwined' with the underlying agreement." Swane Co. v. Berkeley Cty. S.C., No. 2:15-cv-02586, 2015 WL 6688072, at *6 (D.S.C. Oct. 30, 2015) (citation omitted). "When non-signatory defendants seek to avail themselves of an arbitration clause contained in agreement entered into by the plaintiff '[t]he essential question . . . is whether [the] [p]laintiff[ ] would have an independent right to recover against the non-signatory [d]efendant[ ] even if the contract containing the arbitration clause were void.'" Id. (citation omitted).

Upon review, the court observes that the Commission Agreement was signed by Plaintiff as "Manager of Construction Services" and signed by Defendant as "CEO" of MDM. (ECF No. 4-1 at 3.) Plaintiff claims that "the Commission Agreement is not intimately founded in and intertwined with the single cause of action being pursued." (ECF No. 9 at 4.) However, the claim for unpaid commissions appears on its face to relate to the Commission Agreement since the document's express purpose was to set up a commission compensation schedule "[i]n

8

consideration of marketing and business development services rendered by [Plaintiff] Martin Lunn (Employee) resulting in the awarding of contracts to MDM . . . ." (ECF No. 4-1 at 2.) In this regard, without the Commission Agreement, there is no evidence before the court as to why Plaintiff would have the right to recover commissions from Defendant.

This court has previously held that a non-party to a forum selection clause can be bound to it if the entity is "'closely related' to the dispute such that it becomes reasonably 'foreseeable' that it will be bound." Sagittarius Sporting Goods Co., Ltd. v. LG Sourcing, Inc., C/A No. 3:15-00496-MGL, 2016 WL 721302, at *5 (D.S.C. Feb. 23, 2016) (citing Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993)). Herein, because Plaintiff has alleged that Defendant was close enough to MDM's failure to pay Plaintiff commissions that Defendant should be held individually liable under the SCPWA, the court finds that Defendant should be allowed to benefit from invocation of the forum selection clause in the Commission Agreement. Cf. Benefits in a Card, LLC v. Talx Corp., C/A No. 6:06-cv-03655-GRA, 2007 WL 750638, at *4 (D.S.C. Mar. 7, 2007) ("[A] a non-signatory officer of a signatory corporation may compel arbitration when the disputed actions are intertwined with his duties to the corporation.") (citation omitted).

However, the foregoing finding does not resolve Defendant's Motion to Transfer because the court still must determine whether the forum selection clause is valid. Plaintiff asserts that it is not. (ECF No. 9 at 5.) As noted above, a forum selection clause is presumptively valid unless it is shown to be unreasonable as a result of the following: "(1) [its] formation was induced by fraud or over-reaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4)[its]

9

enforcement would contravene a strong public policy of the forum state." Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 651 (4th Cir. 2010) (quoting Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)).  Plaintiff does not allege fraud, the first factor, but does contend that the other three factors weigh heavily in his favor.  (ECF No. 9 at 5.)

In assessing the first of the three remaining factors, the court observes that it is constrained by Atlantic Marine to accord no weight to Plaintiff's choice of forum in the District of South Carolina and "not consider the parties' private interests [i.e., convenience, litigation costs, location of witnesses] where, as here, the parties already have bargained for them in a forum selection clause."  Generation Co., LLC v. Holiday Hosp. Franchising, LLC, NO. 5:15-CV-220-FL, 2015 WL 7306448, at *10 (E.D.N.C. Nov. 19, 2015) (citing Atl. Marine, 134 S. Ct. at 581–82).  Therefore, to meet his burden, Plaintiff can only use public interest factors[4] to show the deprivation of his right to his day in court.  Because of this limitation, Plaintiff's statistics showing greater court congestion in California and arguments as to why the matter is localized to South Carolina and involves only South Carolina law do not persuasively demonstrate why Plaintiff's due process rights will be lost if this action is transferred to the Central District of California.  Varnadore v. Nationwide Mut. Ins. Co., C/A No. 3:13-cv-01777-CMC, 2013 WL 4504770, at *6 (D.S.C. Aug. 22, 2013) ("His arguments do not, in any event, suggest any greater inconvenience or difficulty than would be faced by any person required to pursue litigation, if at all, in a state other than his home state.").  For as many public interest assertions as Plaintiff provides that this matter should be litigated in South Carolina, Defendant provides just as many public interest contentions as to why the matter is properly litigated in California.  (Compare

---

[4] "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'"  Atl. Marine, 134 S. Ct. at 581 n.6 (citation omitted).

10

ECF No. 9 at 1–3 with ECF No. 11 at 2–3.)  For this reason, the court is not persuaded that this factor renders the forum selection clause unreasonable.

Next, the court does not agree with Plaintiff that he would be deprived of his remedy if forced to litigate in California.  Like South Carolina, California's public policy "in favor of full and prompt payment of an employee's earned wages is fundamental and well established." Monastiero v. appMobi, Inc., No. C 13-05711 SI, 2014 WL 1991564, at *6 (N.D. Cal. May 15, 2014).  California courts have observed that "[d]elay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to others, and, in many cases may make the wage-earner a charge upon the public." Id. (quoting Smith v. Superior Court, 39 Cal. 4th 77, 82 (Cal. 2006)).  More to the point, the California Labor Code expressly requires prompt payment of earned wages and, like South Carolina, allows for payment of treble damages under certain circumstances.  Cal. Lab. Code §§ 204, 206 (2016).  Notwithstanding Plaintiff's arguments, the court is not persuaded that Plaintiff would lose his employee wage rights if his lawsuit is transferred to California.

Finally, as to Plaintiff's assertion that the enforcement of the forum selection clause would contravene a strong public policy of South Carolina, the court observes that the Court of Appeals for the Fourth Circuit has expressly rejected this position. Albemarle, 628 F.3d at 652 (noting that South Carolina courts and federal courts sitting in South Carolina have enforced forum-selection clauses in contracts).  "In light of Albemarle, Plaintiff cannot argue that South Carolina has a sufficiently strong public policy against enforcement of forum selection clauses to preclude enforcement of the forum selection clause at issue in this action." Leventis v. AT&T Advert. Sols., C/A No. 3:11-cv-03437-CMC, 2012 WL 931081, at *7 (D.S.C. Mar. 19, 2012).

As a result of the foregoing, the court finds that the forum selection clause in the

Commission Agreement is valid and that Plaintiff fails to present exceptional circumstances mandating that the forum selection clause not be given controlling weight. Therefore, this case should be transferred to the Central District of California as requested by Defendant. Accordingly, Defendant's Motion to Dismiss (ECF No. 4) should be **DENIED AS MOOT**. Sinochem Int'l, 549 U.S. at 430.

## V.     CONCLUSION

Upon careful consideration of the entire record and for the reasons set forth above, the court hereby **GRANTS** Defendant Mike Flower's Motion to Transfer Venue and **TRANSFERS** the matter to the United States District Court for the Central District of California. (ECF No. 4.) The court **DENIES AS MOOT** Defendant's Motion to Dismiss. (Id.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 20, 2016
Columbia, South Carolina